IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | }<br>}<br>} |
| Plaintiff, | }<br>}   CIVIL ACTION NO. |
| v. | }<br>}   00-AR-2762-S |
| PEMCO AEROPLEX, INC., | }<br>} |
| Defendant. | } |

FILED
02 DEC 13 PM 1:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
DEC 13 2002

### MEMORANDUM OPINION

The court has for consideration the motion of defendant, Pemco Aeroplex, Inc. ("Pemco"), for summary judgment. Pemco seeks a dismissal of the above-entitled action which was brought by the Equal Employment Opportunity Commission ("EEOC") on behalf of all of Pemco's black employees and former employees. The complaint alleges that Pemco subjected its black employees to a racially hostile work environment.

The EEOC attempts to accomplish what 36 black plaintiffs in *Thomas, et al. v. Pemco Aeroplex, Inc.*, CV-99-AR-3280-S ("*Thomas*"), an action recently concluded in this court, failed to accomplish. After the EEOC filed its above-entitled action, it sought to have it consolidated with *Thomas* on the ground that the two cases involved the same issues and evidence. Although this court agreed that the issues were the same and that the evidence would be the same in both cases, it denied full consolidation because of the severe logistical problems in managing a trial of the anticipated size of the cases if tried together. Individual verdicts and judgments would have been necessary to address the unavoidably discrete claims of a large number of individuals. The court did order consolidation of the two cases for the purposes of discovery,



and thereafter the EEOC was allowed to participate fully in the joint discovery. After discovery had been closed in both cases, the EEOC again moved for a consolidation for trial. The court again denied the motion for the same reasons that it had earlier denied it.

By the time of the *Thomas* trial, the number of plaintiffs had been reduced from 36 to 22. The complaints of 14 plaintiffs had been disposed of either by plaintiffs' acceptances of Rule 68 offers by Pemco or by dismissals for failure to list claims as assets in individual bankruptcy proceedings. The 22 black employees who actually went to trial claimed that they had been constantly subjected to a racially hostile work environment from June 3, 1992, until the date of trial. They were represented by competent and dedicated counsel, who had diligently engaged in the extensive and expensive discovery in which the EEOC had also participated. After a month long trial, a nine person jury, which included three black jurors, in response to special interrogatories found that there had been no racially hostile environment at Pemco during the period under examination. Accordingly, this court entered a final judgment in favor of Pemco on July 1, 2002. Concluding that it was bound by the jury's finding that there had been no racially hostile environment at Pemco, the court denied plaintiffs' requests for equitable relief and entered a final, appealable judgment in favor of Pemco. No appeal was taken.

The only question presented by Pemco's pending Rule 56 motion is whether or not the final judgment in *Thomas* has preclusive effect and is dispositive of the issues in the EEOC's parallel case. The court will not engage in an academic discussion of the nice distinctions between

issue preclusion and claim preclusion, or the distinctions between *res judicata* and collateral estoppel. Rather, the court proceeds on the broad assumption that questions of disputed fact that have been fully and fairly tried between the same parties or their privies in a case in which a final resolution has been reached by judgment, cannot, in the name of good sense and judicial economy, be tried again. In the case at bar, the applicability of this universally recognized and accepted principle boils down to whether or not the EEOC, and the Pemco employees and former employees it now undertakes to represent, are in sufficient privity with the plaintiffs in *Thomas* to apply this principle.

In *Thomas*, not only did the EEOC have the right to participate in discovery, but it availed itself of that right. The fact that it did not engage in the examination of every deponent and often deferred to counsel for the *Thomas* plaintiffs, is not a controlling fact. Although the EEOC's counsel did not sit at the counsel table while *Thomas* was being tried, she did, with some frequency, sit in the audience as an alert and interested observer.

Very revealing is footnote 5 in the EEOC's brief filed in opposition to Pemco's motion for summary judgment. There, the EEOC says:

> The individuals whose claims were resolved in the *Burnes* [*Thomas*] case (both those who received favorable judgments and those who received unfavorable judgments) **were and remain technically members of the group for which the Commission seeks relief** . . .

(emphasis supplied).

These words can have only one meaning, namely, that the EEOC contends that through its efforts in this case it is still possible for the 36 original *Thomas* plaintiffs to obtain relief against Pemco in this case,

despite the indisputable fact that the 36 are foreclosed by the final judgments entered against them or in their favor. The said judgments were either unsuccessfully appealed or were not appealed.

The court finds it impossible to conceive of the existence of witnesses who realistically could add anything to a trial in the EEOC's case, and who were not called in *Thomas*, and few, if any, incidents or events that were not thoroughly, even agonizingly, explored in *Thomas*. The core factual dispute, i.e., whether or not a pervasively hostile racial environment existed at Pemco during the relevant time period, was tried to the hilt in *Thomas*.

The EEOC's secondary argument that *National Railroad Passenger v. Morgan*, ____ U.S. ____, 122 S.Ct. 2061 (2002), has materially altered the scope of the inquiry, and distinguishes *Thomas* from this case, was obviated by the happy accident that the Supreme Court's decision in *National Railroad* came down while *Thomas* was being tried. *National Railroad* was actually raised as a guide by this court in that case. The jury in *Thomas* was allowed to hear evidence of events that took place long before some of the 36 plaintiffs were even employed by *Pemco*. Whatever environment existed when Pemco's predecessor operated the business operated by Pemco, at the same location, with many of the same employees, was and still is too remote for judicial inquiry. There has been no suggestion by the EEOC that Pemco assumed the liability for possible ancient violations of Title VII committed by the former employer of these or other black employees.

During oral argument on Pemco's motion for summary judgment, the court asked counsel for the EEOC how many of Pemco's black employees and

4

former employees are in the class it represents in this case.  Counsel answered that the number is approximately 200.  This ostensibly includes the 36 plaintiffs in *Thomas*.  The court then asked counsel how the court should go about compensating each individual Pemco employee and former employee for the effects of a hostile work environment if a hostile work environment existed.  Counsel answered that the trial should proceed in two stages; the first should consist of a trial and submission to the jury of the single question of whether or not a hostile environment ever existed (the very question decided in *Thomas*); the second (if the jury should decide that a hostile environment existed) should consist of a series of mini-trials in which the jury would decide each employee's separate claim of damages.  This court spent a month presiding over the *Thomas* trial in which 22 employees jointly claimed that Title VII had been violated by Pemco, but claimed separately for their alleged individual injuries proximately caused by that violation.  The EEOC now wants to have the issue of Title VII liability re-adjudicated, and if successful, then to try to the same jury 200 individual discrete claims for damages.  This idea overlooks several important considerations besides the overwhelming over-exploitation of judicial resources.  The first is that individual compensable injury does not automatically flow from the existence of a hostile racial environment.  A pervasively hostile environment must **proximately cause** injury to a single person in order to provide a basis for an award of damages to that person.  Thus, not only is the EEOC asking that the amount of injury be tried 200 times, but the issue of the proximate causation of alleged injuries would be tried 200 times.  Different employees would not only have differing

5

degrees of hurt, if hurt at all, but there would be different time periods of exposure to the obnoxious employer conduct. For instance, some of the EEOC's large class may have retired years ago, while others may have been promoted to supervisory positions at Pemco and be very happy employees. Second, Pemco, in theory, could have had 2,000 black employees and former employees instead of the EEOC's anticipated 200. After having recently tried 22 discrete claims to a jury, it boggles the court's mind to think of trying 200 individual claims, much less 2,000. What the EEOC suggests as the procedure for providing monetary relief for an unlimited number of quasi-class members, boggles the court's mind into incomprehension.

If the EEOC's description of the class it purports to represent had expressly excluded the 36 plaintiffs in *Thomas*, the issue of preclusive effect would be only slightly less difficult than it is. But, when the EEOC insists that it represents **all** of Pemco's black employees, past and present, including the *Thomas* plaintiffs, the EEOC more loudly invites the application of a doctrine of preclusion.

The EEOC contends that it has a special status, and that by virtue of its statutory mandate it cannot be precluded by an adjudication in another case in which it was not a formal party. Carrying this idea to its logical or illogical conclusion, the EEOC's case could proceed **even if the named plaintiffs in *Thomas* had included every black employee and former black employee of Pemco**. If the EEOC is correct, it matters not whether all of its present clients, in their separate private actions, had already won or lost, because, according to the EEOC, it represents a larger public interest. This court cannot find any public interest in

6

such an outlandish expenditure of time and effort.

If the jury in *Thomas* had found that an environment hostile to blacks existed at Pemco, this court would have granted summary judgment in favor of the EEOC on the issue of hostile environment. If this had occurred, the court of course could not have avoided having to deal with the question of fashioning appropriate relief for 200 individuals. Pemco may not have agreed with the court's ruling in such a case, but the EEOC, on the other hand, probably would have been delighted. However, the question is academic. The court is now operating under **known** procedural circumstances and not in a vacuum. A qualified jury has actually found that no racially harassing environment existed at Pemco. The EEOC is, or should be, bound by that finding.

There simply must be an end to litigation. After a sufficient number of battles, even the Hatfields and the McCoys put down their guns. Although the EEOC wants to continue the fight on behalf of black employees and former employees, and, though the EEOC has the resources to do so, this court believes that the controversy has been fully and fairly tried and has been finally disposed of. The court, therefore, will enter an order granting Pemco's motion for summary judgment.

DONE this 13th day of December, 2002.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE